**FOWLER et al. v. HONORBILT PRODUCTS, Inc.**

**No. 7911.**

Circuit Court of Appeals, Third Circuit.

Argued July 14, 1942.

Decided Oct. 29, 1942.

Albert F. Mecklenburger, of Chicago, Ill. (Howson & Howson and Kennard N. Ware, all of Philadelphia, Pa., on the brief), for appellant.

John Dashiell Myers, of Philadelphia, Pa. (Chester C. Baxter, of Philadelphia, Pa., on the brief), for appellees.

Before MARIS and JONES, Circuit Judges, and SMITH, District Judge.

JONES, Circuit Judge.

The defendant, Honorbilt Products, Inc., appeals from a decree of the District Court holding valid and infringed Patent No. 1,565,267 for an upholstery pad, issued on December 26, 1925, to Del Roy F. Fowler, one of the plaintiffs. The suit was instituted by Fowler, the owner of the patent as well as the patentee, and F. Burkart Manufacturing Company, the exclusive licensee under the patent. Honorbilt Products, Inc., is a manufacturer of mattresses, and the complaint alleges that Honorbilt, in its manufacture of mattresses, utilizes a sisal pad which infringes the patent in suit.

The patent contains but a single claim which reads as follows:

"A pad for upholstery made up of a fabric backing overlaid by a multiplicity of thin veils of dry carded, long and wavy sisal fibre, said veils being successively superposed upon each other with the fibres of successive layers crossing each other at an angle so as to form a springy unfelted pad and said pad being stitched to the backing."

From the findings contained in the opinion of the court below we summarize the following facts.

Pads of the sort described in the patent are used to overlie the helical springs of inner-spring mattresses and upholstery. Before the patent in suit there were in use upholstery pads consisting of bats stitched to reinforcing sheets. Bats had been made of cotton jute and other soft fibres, and hair and sponge rubber had also been used in the bats, but never sisal. Cotton bats were the commonest and were in general use. The difficulty with cotton pads as with all soft fibre pads was that they lacked resiliency with the result that they sank into the spaces in and between the springs and thus became lumpy and uneven. The sisal pads solved this difficulty.

The characteristics of sisal were matters of common knowledge and loose sisal had been tried by upholsterers in an effort to make better pads. These were of little or no use, because, in order to get the particular structure required to resist the spring thrust, it was necessary to have a pad of superposed veils with the fibres laid lengthwise, the veils crossing and recrossing diagonally. This type of veil had already been disclosed and had been used in making pads of cotton.

The trial court further found that Fowler "developed his pad by taking the hard-fibred

sisal, making the necessary adjustments upon the machinery which had been used for carding and lapping soft-fibred cotton, and carding and lapping the sisal by means of it. No one, prior to his time, imagined that sisal could be treated in this manner. Apparently no one knew that sisal was cardable."

The trial court then concluded that "It may not have been a matter of great difficulty to adapt the machinery then in existence, but the idea that it [carding and lapping sisal by machine] could be done, reduced to practice, was, in my opinion, invention."

Such however is not the invention claimed by the patent in suit. No mention whatever is made therein of a machine or machine adjustment for the carding or lapping of sisal. As the patent application states, the "invention relates to upholstery pads" made of thin superposed veils of dry carded sisal stitched to a fabric back, with the longitudinally placed fibres of one veil disposed diagonally to the fibres of the adjacent veils. The Fowler patent no more discloses a method for carding sisal than did Stratford forty years earlier in his British patent (No. 11,409) for an upholstery material wherein he specified the use of sisal which "After being curled or crimped and picked, * * * is preferably carded by any well known carding machinery * * *." Fowler's patent both in its specifications and in its claim presupposes the

practitioner's knowledge of how to card sisal. We need not therefore consider whether the carding of sisal was known to the art prior to Fowler or whether it was not really Klenk, the manufacturer of carding machinery whom Fowler consulted, who by trial and error ascertained the extent of mechanical adjustment of known machinery needed to obtain the proper coarseness of the clothing (carding teeth) in order to card sisal satisfactorily.

As the court below found, upholstery pads made of thin veils of cotton fibre, superposed so that the longitudinally placed fibres of one veil are disposed diagonally to the fibres of the adjacent veils, and stitched to a fabric back, had long been known and in use prior to Fowler. It seems plain, therefore, that what the Fowler patent claims over the prior art is the use of sisal rather than cotton or other fibrous material in the manufacture of the veils to be superimposed so as to form a pad. That this is so Fowler clearly conceded in his cross-examination at trial.[1]

The sole issue in this case is whether it constituted invention to use sisal instead of cotton or other fibrous material in the manufacture of upholstery pads in the same way in which such pads had been physically constructed in the past.

▮ The parties are in no disagreement as to the law in general. They dispute rather as to which of the established rules is applicable to the facts of this case. Thus

---

[1] Upon Fowler's being shown in cross-examination a cotton pad of thin superposed veils stitched to a burlap back, which he admitted he had manufactured in 1920, he was then asked, and testified, as follows:

"Q. Now, Mr. Fowler, I want you to listen to what I am going to read to you and tell me whether or not the language that I am going to read to you is a correct description of this pad which I have just referred to, or the pads of that character which you have made.

" 'A pad for upholstering, made up of a fabric backing overlaid by a multiplicity of thin veils of dry carded—fibre, said veils being successively superposed upon each other with the fibres of successive layers crossing each other at an angle so as to form a * * * pad, and said pad being stitched to the backing.' A. Well, it has all the earmarks of being exactly what you read.

"Q. And you have made batts as early

as 1920 which do correspond with what I have read? A. Yes.

"Q. Now, is there any difference between the pad described in your patent and the pad which I described in the language which I just read to you, other than that in the pad of the patent, sisal fibre is substituted for cotton fibre? A. You want to know whether there is any difference?

"Q. Yes. A. Substantially that is correct.

"By the Court:

"Q. That there is no difference? A. There is no difference."

The language of the inside-quote in the first question above is precisely the language of the claim of the patent in suit except that in the patent claim the additional words "long and wavy sisal" appear where the dash is shown between the words "carded" and "fibre", and the words "springy unfelted" appear where the asterisks are shown between "a" and "pad".

the appellant maintains, and the appellees concede, that it is not invention to substitute superior for inferior materials in making one or all of the parts of a machine or manufacture. And such has been the law as applied even in cases where the substitution was both new and useful and the increase in utility exceedingly great. Improvements due merely to the substitution of material have been held to be but the result of judgment and skill in the selection and adaptation of materials and not the result of inventive faculty. To this general rule there has developed an important exception upon which the appellees here rely. If the substitution of materials involves a new mode of construction, or if it develops new properties and new uses of the article made, it may constitute invention. But in order for the substitution of material to rise to the dignity of invention the substitution must produce a new mode of operation or result in a new function or property. See generally 1 Walker on Patents (Deller's Ed.) § 29 and cases there cited.

The leading case applying the general rule is Hotchkiss v. Greenwood, 11 How. 248, 52 U.S. 248, 266, 13 L.Ed. 683, where the patent related to an improvement in door and other knobs by the use of clay or porcelain rather than wood or metal in their manufacture. The Supreme Court conceded that the patented article was no doubt better and cheaper but observed that this did not result from any new device or contrivance but from the fact that the material of which the patented knob was composed happened to be better adapted to the purposes for which knobs are used. The improvement lay in the superiority of the material. This the Supreme Court said "can never be the subject of a patent. * * * It may afford evidence of judgment and skill in the selection and adaptation of the materials in the manufacture of the instrument for the purposes intended, but nothing more."

The exception to the general rule, upon which the appellees rely, was laid down in Smith v. Goodyear Dental Vulcanite Co., 93 U.S. 486, 496, 497, 23 L.Ed. 952. The patent there in litigation was for the making of plates of artificial teeth set in rubber. The various parts were baked so as to form the plate as if it were one piece. The contention was made, on the basis of the general rule, that there was no invention because the patent merely made a substitu-

tion of vulcanite for other materials previously used. The Supreme Court conceded (93 U.S. at page 492, 23 L.Ed. 952) that if this was in truth all that the patent described and claimed, there could not be invention. But the Court held that the invention was for a product *together with the process by which it was created,* and that the process was as much a part of the invention as the materials of which the product was composed. The process extended beyond the use of known materials and the employment of old processes. It consisted of vulcanizing soft rubber in a mold and in contact with artificial teeth inserted in place into the rubber while it remained in a soft condition, and the product, when baked, became "one piece". This the Supreme Court held (93 U.S. at page 494, 23 L.Ed. 952) resulted in a new product differing from all that had preceded it not merely in degree of excellence and usefulness but in its new uses and properties. It was the latter circumstance which evidenced an exercise of inventive faculty.

Further citation of authority could serve only to reiterate the rule and the exception to which we have referred. The respective principles therein contained were established for us by the cases already cited.

The appellees contend that the patent in suit "involves new physical construction and a new mechanical interaction of the separate elements within the pad itself and produces a new result" which consequently constitutes invention within the rule applied in Smith v. Goodyear Dental Vulcanite Co., supra. The appellant, on the other hand, maintains that the patent in suit teaches no new uses or means and produces no new properties or result but merely substitutes a better material for use in an old manufacture and that the patent is therefore invalid for want of invention under the rule of Hotchkiss v. Greenwood, supra.

The pad of the patent in suit is constructed in exactly the same way that pads of fibres other than sisal had been made for many years. The better article derived from the use of sisal was not the result of any new contrivance or process described by the patent. It was due alone to the fact that the peculiar properties and characteristics of sisal rendered it superior for padding purposes in upholstery,—a fact which had long been widely known and understood. The mere adaptation of sisal to the particular manufacture could not, there-

fore, be the subject of a patent. Hotchkiss v. Greenwood, supra.

■ We are unable to perceive wherein the patent in suit discloses anything more than the substitution of sisal for cotton or other fibrous material in the manufacture of upholstery pads. The patent neither claims nor teaches anything more. Whether Fowler was the first to card sisal (and, of that, there is very serious doubt), or whether he devised the means for carrying the sisal, after it is carded, over to the camel-back of the lapping machine (which, again, may well be questioned) is not before us, for neither of those processes is within the claim of the Fowler patent in any view. Nor may the satisfactory solution of those problems, which are not treated with in the patent, give any validity to a claim otherwise deficient in the requisites for invention.

■ The fact that there has been a wide sale and use of upholstery pads made of sisal is incapable of imputing validity to a patent which does not embrace invention. In any instance, "it is only when invention is in doubt that the commerical success of a patent may turn the scale in the patentee's favor." E. J. Brooks Co. v. Klein, 3 Cir., 114 F.2d 955, 958. Commmercial success, utility and prompt acceptance add little weight, if any, to a patent where an examination of the patented article or device leaves no doubt that there is no invention. Paramount Publix Corp. v. American Tri-Ergon Corp., 294 U.S. 464, 474, 55 S.Ct. 449, 79 L.Ed. 997; Zephyr American Corporation v. Bates Mfg. Co., 3 Cir., 128 F.2d 380, 385. The validity of a patent is not to be imputed merely because the patentee achieved commercial success with it. Durand v. Bethlehem Steel Co., 3 Cir., 122 F.2d 321, 323.

The appellees' argument based on the appellant's alleged inconsistent attitudes with respect to the sisal pad is in its essence a plea of estoppel. The basis for the contention lies in the conduct of the appellant's immediate predecessor in praising the results of the sisal pad and the appellant's action in accepting a license under the Suekoff patent for the construction of mattresses containing sisal pads. It is less than clear that that conduct, so removed as it is from the patent in suit, could estop the appellant. But, even if it could, that would not supply invention where invention does not independently exist. The conduct of the parties to a patent suit, while effective inter sese, does not foreclose the court from determining whether the patent covers invention. In Densmore v. Scofield, 102 U.S. 375, 378, 26 L.Ed. 214, the Supreme Court said that "the public has rights also. The rights of both [public and patentees] should be upheld and enforced by an equally firm hand, wherever they come under judicial consideration." A proper regard for the public interest present in a patent suit enjoins upon courts that they not extend the privilege of patent monopoly where invention does not obtain. To act otherwise would tend "rather to obstruct than to stimulate invention" for granting to "a single party a monopoly of every slight advance made, except where the exercise of invention, somewhat above ordinary mechanical or engineering skill is distinctly shown, is unjust in principle and injurious in its consequences." Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 231, 27 L.Ed. 438.

The decree of the District Court is reversed and the cause remanded with directions to dismiss the complaint for want of invention.