### LYONS v. CONSTRUCTION SPECIALTIES, Inc. et al.

Civ. A. No. 519–51.

United States District Court
D. New Jersey.
May 25, 1953.

318

Harry B. Rook, Newark, N. J., Rockwell & Bartholow, by Edmond M. Bartholow, New Haven, Conn., for plaintiff.

McCarter, English & Studer, Newark, N. J., by Conover English, Newark, N. J., Campbell, Brumbaugh, Free & Graves, New ard G. Fuller, Jr., New York City, for defendants.

MODARELLI, District Judge.

George W. Lyons, owner of United States Patent No. 2,174,989 for a cellar closure called a "Hatchway," brings this action for infringement against John Murray, Michael Murray, and Bernard Murray, a partnership, doing business as Seaboard Metal Products Co., for making and selling cellar doors to defendant, Construction Specialties, Inc. The latter is joined for selling these doors to the building trade.

Two types of doors made and sold by defendants are involved. The first, denoted as Exhibit D or D–7, is said to infringe Claim 4 of plaintiff's patent. The second, denoted as Exhibit E or D–8, is said to infringe Claims 2 and 3 of plaintiff's patent. The claims in issue are set forth in the margin.[1] Reproductions of these exhibits are included herein. Better procedure requires a consideration first of the question of validity of plaintiff's patent. Sinclair & Carroll Co., Inc. v. Interchemical Corp., 1945, 325 U.S. 327, 330, 65 S.Ct. 1143, 89 L.Ed. 1644.

Plaintiff's patent is for a cellar hatchway of sheet metal. Its two doors rest on a wedge-shaped frame, the angular side walls of which account for its slope. The frame

---

[1] "2. A structure of the class described providing closure means for a hatchway, said structure comprising a sheet metal frame having angular side walls having inwardly bent flanges, a sloping top with an opening therein; doors for closing said opening hinged on the underside of said flanges; and means comprising upwardly bent lips on said flanges providing a tight closure of said doors to prevent entrance of water.

"3. A structure of the class described providing closure means for a hatchway, said structure comprising a sheet metal frame having side walls with inwardly bent flanges, an opening between said flanges; doors for closing said opening hinged on the underside of said flanges, means comprising downwardly bent edges of said doors providing a tight closure of said doors and said means being adapted to fit and abut against upwardly bent lips carried by said flanges.

"4. A sheet metal structure of the class described comprising a frame having angular sides, a head piece connecting said sides, inwardly extending flanges formed by bending edges of said sides bounding an opening in the structure, doors having lips or turned up edges for closing said opening, said doors being hinged on the underside to said flanges, said angular side walls and said head piece carrying means for securing the structure to fixed points, and said flanges and head piece having lips arranged to fit closely with the lips provided on the doors so as to provide a watertight seat for said doors when closed."

FIGURE 1
Exhibit D (D-3)

FIGURE 2
Exhibit E (D-8)

is open on the top surface and flanges bend upward at the opening. The doors which open outward from the center of the frame opening have downwardly turned flanges at their perimeters. The downward flange on the doors and the upward flange on the frame at the opening provide a watertight closure which prevents the seepage of water through the hatchway. Lyons' figures which were filed with the Patent Office are reproduced to illustrate the construction of the hatchway.

[1] Sloping cellar doors of the general appearance and function of plaintiff's have been in use for well over five decades. Two patents, Tolson No. 1,033,214, granted July 23, 1912, and Clark No. 732,275, granted June 30, 1903, suffice to indicate that cellar hatchway units with sloping tops, angular sides, and outwardly opening doors have been known in the prior art. In fact, plaintiff in his deposition of February 14, 1952, at page 14, stated that building of cellar doors was not new, that they were "built

FIGURE 3

Oct. 3, 1939.　　　　G W. LYONS　　　　2,174,989

HATCHWAY

Filed Oct 9, 1936

INVENTOR.
George W. Lyons
BY
ATTORNEY

322

before George Washington's time." The fact that plaintiff employed sheet metal for his product does not, of course, render the product patentable. Substitution of superior materials in making one or all of the parts of a product does not render the improvement patentable. Fowler v. Honorhilt Products, 3 Cir., 1942, 131 F.2d 153.

The alleged innovation then is embodied in the means for effecting a watertight closure for the doors of the hatchway by effecting a snug overlapping of the downward flange of the door over the upward flange of the frame. With this feature in mind, we examine the Mulford Patent No. 1,051,617 for a metal sidewalk door issued prior to the patent in suit, a diagram of which is reproduced here. That hatchway lies flat at sidewalk level, as distinguished from the Lyons Patent which is raised to a

FIGURE 4

L. W. MULFORD.
SIDEWALK DOOR.
APPLICATION FILED SEPT. 1, 1911.

1,051,617.                    Patented Jan. 28, 1913.

sloping position by its angular sides. The edges of the Mulford doors are rolled downward to fit snugly over and against flanges extending upward from the frame. In the words of the Mulford specifications " * * * the edges of the door are provided with overlapping flanges to prevent leakage at the joints." The purpose of and the arrangement of the flanges are strikingly similar in the Mulford and Lyons Patents. Improvements are made by Lyons in that the flanges are made by bending the metal of the door and the frame as the case may be, while Mulford's frame flange is a separate piece of angle iron bolted to the frame. The door flanges of Mulford are rolled over the frame flanges so as to avoid any sharp protrusion that would obstruct the sidewalk. As the Lyons door sits well above sidewalk level this consideration was unnecessary, so that the Lyons flanges are wider and meet at right angles to the door, thus effecting a more certain watertightness. This difference in construction is not significant.

The Janson Patent No. 780,610, issued January 24, 1905, employed a similar method to effect a watertight closure.

Lyons did not introduce a new idea for a watertight hatchway; rather he took the Mulford and Janson ideas for overlapping flanges, improved on the method of effecting the flange arrangement, and adopted it to doors of the type disclosed by Tolson and. Clark.

We do not reach the question of whether under the new Patent Code the Lyons product is patentable, for the effective date of the Patent Code post dates both the Lyons Patent and the filing date of this suit. The court takes this opportunity to point out, however, that the Third Circuit in the recent case of Stanley Works v. Rockwell Mfg. Co., filed April 13, 1953, and reported in 21 Law Week 2510, has held that the Patent Code does not effect a change in the standards of patentability set by the Supreme Court of the United States. That opinion points out that in all reported occasions upon which courts have taken the question under advisement the same conclusion was reached, citing Carlson & Sullivan, Inc. v. Bigelow & Dowse Co., 1 Cir.

1953, 202 F.2d 654, filed March 3, 1953. Thys v. Oeste, D.C.N.D.Cal., 111 F.Supp. 665. This court finds to like effect General Motors Corp. v. Estate Stove Co., 6 Cir., 203 F.2d 912, and In re O'Keefe, Cust. & Pat.App., 202 F.2d 767.

■■ It is not every improvement of a product that is patentable, "More ingenuity must be involved than the work of a mechanic skilled in the art." Cuno Engineering Corp. v. Automatic Devices Corp., 1941, 314 U.S. 84, 62 S.Ct. 37, 40, 86 L.Ed 58. Where old tools are brought into new combination more than slight advance in the art is requisite. Mechanical changes which would occur to one familiar with the art when confronted with a particular problem are not patentable. Detroit Gasket & Mfg. Co. v. Victor Mfg. & Gasket Co., 7 Cir., 1940, 114 F.2d 868; Mantle Lamp Co. v. Aluminum Products Co., 1937, 301 U.S. 544, 57 S.Ct. 837, 81 L.Ed. 1277; and Concrete Appliances Co. v. Gomery, 1925, 269 U.S. 177, 46 S.Ct. 42, 70 L.Ed. 222.

■ Combination patent claims are scrutinized with great care.

" * * * Elements may, of course, especially in chemistry or electronics, take on some new quality or function from being brought into concert, but this is not a usual result of uniting elements old in mechanics. * * *

"Courts should scrutinize combination patent claims with a care proportioned to the difficulty and improbability of finding invention in an assembly of old elements. The function of a patent is to add to the sum of useful knowledge. Patents cannot be sustained when, on the contrary, their effect is to subtract from former resources freely available to skilled artisans. A patent for a combination which only unites old elements with no change in their respective functions, such as is presented here, obviously withdraws what already is known into the field of its monopoly and diminishes the resources available to skillful men. This patentee has added nothing to the total stock of knowledge, but has mere-

**324**

ly brought together segments of prior art and claims them in congregation as a monopoly. * * *" Great Atlantic & Pacific Tea Co. v. Supermarket Corp., 340 U.S. 147, 152, 153, 71 S.Ct. 127, 130, 95 L.Ed. 162. Accord: Lincoln Engineering Co. v. Stewart-Warner Corp., 1938, 303 U.S. 545, 58 S.Ct. 662, 82 L.Ed. 1008, Toledo Pressed Steel Co. v. Standard Parts, Inc., 1939, 307 U.S. 350, 59 S.Ct. 897, 83 L.Ed. 1334, and Cuno Engineering Corp. v. Automatic Devices Corp., supra. The Third Circuit has expressed the standard of validity of combination patents in Packwood v. Briggs & Stratton Corp., 195 F.2d 971, 973:

"A discovery or devising must add something of significance, though not necessarily very much, to scientific knowledge if it is to take on the quality of invention under a statutory scheme which gives the inventor, for a number of years, a legally protected monopoly in a legal order which generally abhors monopoly. Courts sometimes attempt to describe this quality which invention must reveal as 'creative' or as revealing 'genius'. (Citations omitted.) Impossible as precision is in such description, the requirement of creative discovery adding to scientific knowledge makes it clear why many alleged inventions are unquestionably outside of the area protected by the patent laws.

"This conception has been particularly helpful in the evaluation of those discoveries in the field of mechanics which have involved only combinations of old and familiar elements and ideas. When, if ever, can such combination be said to add to scientific knowledge? The reasonable and accepted answer is if, but only if, the particular combination yields some surprising or extraordinary result. (Citation omitted.) 'The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention.'"

The opinion in Avery v. Ever Ready Label Corp., D.C.N.J.1952, 104 F.Supp. 913, reveals this court's interpretation of the standards of patentability.

 The Lyons combination falls short of the standards set by the noted cases. This court holds the Lyons Patent invalid.

An order may be submitted in conformity with the opinion herein expressed.