**MOJONNIER BROS. CO., Inc.,**
Plaintiff,

v.

**TOLAN MACHINERY CO., Inc., a corporation, Defendant.**

Civ. A. No. 849–51.

United States District Court,
District of New Jersey.

April 5, 1955.

Robert W. Brady, Newark, N. J., by Frank J. Foley, Chicago, Ill., for plaintiff.

S. Richard Schiffman, Paterson, N. J., by W. Lee Helms, New York City, for defendant.

MODARELLI, District Judge.

This action was instituted by Mojonnier Bros. Co., Inc., against Tolan Machinery Co., Inc., to enjoin alleged infringements of Patent No. 2,169,054 issued to Julius J. Mojonnier, plaintiff's assignor, on August 8, 1939, and Patent No. 2,179,949 issued to Harry G. Mojonnier, plaintiff's assignor, on November 14, 1939. Both patents presently are owned by plaintiff, who also demands an accounting of profits, damages, counsel fees, and costs. At the trial, defendant withdrew its counterclaim based on the alleged unfair competition of plaintiff. Defendant's answer to the complaint put in issue whether plaintiff's patents are invalid because they were anticipated by the prior art.

This action involves the validity of claims 5 through 12 of Patent No. 2,169,054 [1] and all of the five claims of Patent

---

1. "5. A heat exchanger for liquids such as milk comprising a plurality of sections hinged at corresponding ends of the several sections to swing laterally relatively to one another away from operative positions in which they stand close together side by side to positions in which the sections are accessible for cleaning, means for supplying a heat exchange medium to the several sections and operable to permit said swinging movements of said sections, and means for delivering the liquid separately to said several sections when in their operative positions.

"6. A heat exchanger for liquids such as milk comprising a plurality of sections

hinged at corresponding ends of the several sections to swing laterally relatively to one another away from operative positions in which they stand close together side by side to positions in which the sections are accessible for cleaning, means for supplying a heat exchange medium to the several sections and operable to permit said swinging movement of said sections, means for delivering the liquid separately to said several sections when in their operative positions, the said sections being movable relatively to the liquid delivering means, and means for properly alining the sections in their operative positions relatively to said liquid delivery means.

"7. A heat exchanger for liquids such as milk comprising a plurality of sections, means mounting said sections for movement laterally relatively to one another to and from operative positions in which they are arranged close together side by side, means for delivering liquid to said sections when in their operative positions, said sections being arranged in vertical groups each comprising a plurality of said sections disposed one above the other, the sections in each group being independently movable laterally, means for supplying a heat exchange medium to the corresponding sections of different vertical groups, and means for supplying a different heat exchange medium to other corresponding sections of different vertical groups.

"8. A heat exchanger for liquids such as milk comprising a plurality of sections, means mounting said sections for movement laterally relative to one another to and from operative positions in which they are arranged close together side by side, means for delivering liquid to said sections when in their operative positions, said sections being arranged in vertical groups each comprising a plurality of said sections disposed one above the other, the sections in each group being independently movable laterally, means for supplying a heat exchange medium to the corresponding sections of different vertical groups, means for supplying a different heat exchange medium to other corresponding sections of different vertical groups, the said sections being independently mounted for such relative lateral movement and independently demountable.

"9. A heat exchanger for liquids such as milk comprising a plurality of vertical groups of heat exchange sections arranged side by side and separable from one another by sidewise movement to render the sections accessible for cleaning, the sections in each vertical group being independently movable sidewise, and connections by which different heat exchange mediums are supplied to the different sections of the vertical groups.

"10. A heat exchanger for liquids such as milk comprising a plurality of vertical groups of heat exchange sections arranged side by side and hinged to swing sidewise outwardly from said side by side positions to render the sections accessible for cleaning, the sections in each vertical group being independently movable sidewise, and connections by which different heat exchange mediums are supplied to the different sections of the vertical groups.

"11. A heat exchanger for liquids comprising a frame, a first upright liquid treating section and other upright liquid treating sections, all of said sections being adapted to occupy operative positions in which they stand close together side by side and other positions in which they are individually accessible for cleaning, said first and other sections having in each instance an interior for receiving a liquid controlling medium and an exterior comprising surfaces on its opposite sides over which the liquid to be treated may pass in a downward course independently of engagement with other sections, means for securing said first section to said frame and supplying its interior with a liquid controlling medium, means for hinging said other sections to said frame and supplying a liquid controlling medium to their interiors, said hinging and supplying means providing, first, vertical axes of rotation for said other sections near corresponding vertical edges of all of said sections, one vertical axis of rotation for each said other section, and, second, medium supply connections for said other sections for supplying said medium thereto when said other sections are in their operative positions, said connections being mechanically continuous for all positions of said other sections, whereby said sections may be made to occupy said operative and cleaning positions at will without disconnecting said medium supply connections, means near the tops of said sections when in their operative positions to deliver thereto the liquid to be treated, and means at the bottoms of said sections when in their operative positions to receive therefrom the treated liquid.

"12. A heat exchanger for liquids comprising a frame, a first upright liquid treating section and other upright liquid treating sections, all of said sections being adapted to occupy operative positions in which they stand close together side by side and other positions in which they are individually accessible for cleaning,

No. 2,179,949.[2] Although the answer put in issue all of the claims of the former patent, the parties stipulated that there be no adjudication of claims 1 through 4. Newburgh Moire Co. v. Superior Moire Co., 3 Cir., 218 F.2d 580, 583.

### Patent No. 2,169,054

The nature of the patent is described by the patentee in the patent specifica-tion. The patent relates to liquid treating apparatus, the object of which is to change the temperature in the treated liquid by passing heat through a metal wall or partition. The heat is either supplied or absorbed by a temperature modifying fluid, depending on the direction of flow of the energy. Where the heat passes from the modifying fluid to the treated liquid the latter is heated; but where the heat passes from the treated said first and other sections having in each instance an interior for receiving a liquid controlling medium and an exterior comprising surfaces on its opposite sides over which the liquid to be treated may pass in a downward course independently of engagement with other sections, means for securing said first section to said frame and supplying its interior with a liquid controlling medium, swiveled hollow hinges for hinging said other sections to said frame, conduit connections for supplying a liquid controlling medium through said hinges to the interiors of said other sections, said hinges and conduit connections being located at corresponding ends of said sections and providing vertical axes of rotation for said other sections and medium supply connections for said other sections, which connections remain mechanically unbroken in all angular positions of said sections, whereby said sections may be made to occupy said operative and cleaning positions at will without disconnecting said medium supply connections, means near the tops of said sections when in their operative positions to deliver thereto the liquid to be treated, and means at the bottoms of said sections when in their operative positions to receive therefrom the treated liquid."

2. "1. In a device of the class described, a group of relatively flat heat exchange elements arranged side by side in substantially parallel relation, said elements providing narrow intervening spaces, an inlet flue, a relatively wide and shallow nozzle at the outlet end of said inlet flue, the plane of said nozzle extending transversely of the planes of said elements, and the nozzle opening being wide enough to embrace within its discharge area the adjacent edges of all of said elements.

"2. In a device of the class described, a group of relatively flat upright exchange elements of the trickle type arranged side by side in substantially parallel relation, said elements providing narrow intervening spaces, an inlet flue, and a nozzle receiving from said flue and discharging into all of said spaces, whereby air or the like is circulated among said elements.

"3. In a device of the class described, a casing, a group of vertical exchange elements of the trickle type arranged side by side in substantially parallel relation in said casing, said elements providing narrow intervening spaces, an outlet flue extending outward from an upper part of said casing, an inlet flue entering said casing near its bottom, and a nozzle for said inlet flue operative to direct a scavenging blast into all of said spaces, whereby said blast circulates among said elements and passes out through said outlet flue.

"4. A device of the class described comprising a fixed housing portion, movable covers for engaging said portion and cooperating therewith to provide an inclosure, a group of upright heat exchange elements adapted to be arranged side by side in substantially parallel relation in said inclosure, an inlet flue entering said inclosure by passing through a lower portion of said fixed housing portion, a nozzle for said flue operative to direct a blast of scavenging air among said elements when said inclosure is established, to clear the same of gases and the like, and outlet means for conducting the loaded air from the inclosure after it has passed among said elements.

"5. A device of the class described comprising a fixed housing portion, movable covers for engaging said portion and cooperating therewith to provide an inclosure, a group of upright heat exchange elements adapted to be arranged side by side in substantially parallel relation in said inclosure, an inlet flue entering said inclosure by passing through a lower portion of said fixed housing portion, a nozzle for said flue operative to direct a blast of scavenging air among said elements when said inclosure is established, and an outlet flue passing from said enclosure through an upper portion of said fixed housing portion and operative to conduct the loaded air from said inclosure."

liquid to the modifying liquid the former is cooled. Corrugated metal sheets are used for the principal surface members of the unit and they are spaced apart, the liquid passing downward over these sheet surfaces while it receives or gives off heat. Suitable inlet and outlet connections are provided for the flow of the temperature modifying medium as well as suitable delivering and collecting means for the liquid being treated. Another purpose of the patent is to permit an efficient cleaning of the several heat transferring units. Each unit is mounted on an axis extending along one of its edges so that it can be swung into and out of normal operating position. By locating the axes of the units close together, the units can be compactly grouped for service and separated readily for cleaning. Preferably, the units are mounted so that they may be opened out like the leaves of a book. Another feature is in the arrangement of the units one above another or one group above another group. With such an installation, the liquid under treatment passes from one kind of treatment received from the upper units to another kind of treatment administered by the lower units. Thus in treating milk, water may be the controlling medium of the upper units and ammonia or brine the controlling medium of the lower units.

Plaintiff contends that its device has four advantages over the prior art: (1) Closely parallel leaves which yield large cooling capacity in a small floor area; (2) the rotatable leaves allow easy cleaning; (3) the connections for the coolants need not be disconnected when the leaves are rotated to a cleaning position; and (4) it is safe to use water, brine, or ammonia as a coolant. Essentially, plaintiff maintains that its device is an improvement in trickle type coolers in that it has a plurality of hinged leaves which are parallel and close together and swingable to wide angular positions for cleaning without disrupting the coolant connections.

Since the court concludes that claims 5 through 12 of the patent are invalid because of prior art anticipation and lack of invention, there is no need to discuss or decide the issue of infringement.

■■ This is a combination patent in that plaintiff's apparatus is entirely composed of old components. Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 152, 153, 71 S.Ct. 127, 95 L.Ed. 162. Accord, Packwood v. Briggs & Stratton Corp., 3 Cir., 195 F.2d 971, 973, certiorari denied 344 U.S. 844, 73 S.Ct. 61, 97 L.Ed. 657, rehearing denied 344 U.S. 882, 73 S.Ct. 174, 97 L.Ed. 683. Those cases set forth the criteria by which this court must judge validity: Do the old elements perform any additional or different functions in the combination than they perform out of it? Has plaintiff merely united old elements without changing their respective functions?

At the time Julius J. Mojonnier applied for his patent, the idea of using a plurality of closely parallel hinged leaves was known to the art. The Reid Patent No. 557,883 for a milk cooler provides for cooling surfaces over which flows the substance to be cooled. The cooling surfaces consist of two corrugated metal plates connected at opposite ends a slight distance apart by filling-strips. The Brophy Patent No. 628,689 for a heat radiator describes hinged leaves or coils; the leaves are hinged upon a post which forms part of the return-pipe through which the water or steam flows after having passed through the heating coils. That patent also provides brackets to allow the use of two or more leaves or coils. The Brandt Patent No. 707,081 for an atmospheric steam condensing apparatus describes "a series of corrugated walls which are mounted in two vertical end pieces or split headers, each two of such walls providing a continuous surface and constituting a unit, any number of which may be associated by adding or assembling one or more units—that is to say, the area of space occupied by a condenser may be increased or decreased, according to the number of units or con-

denser-sections that are brought together."

As to the second advantage claimed by plaintiff, rotatable leaves are described in the aforementioned Reid Patent: "* * * and the invention consists in an improved manner of sustaining the cooling-body to admit of its being turned from its operative position to allow access to its rear side; * * *.

"In order that access may be had to the rear side of the cooler, which when in operation is sustained in an upright position by means of brackets M M, &c., I so attach the cooler to the brackets that it may be swung bodily outward from the wall on a vertical axis."

The aforementioned Brophy Patent describes an invention relating to "heat-radiators of the kind wherein hinged leaves or coils are employed for facilitating cleaning, the objects of the present invention being to simplify the construction of such apparatus and increase the facility with which access to the various parts can be obtained.

"According to my present invention instead of hinging the leaves upon a post or upright which formed no part of the heating system I now hinge them upon a post which forms a part of the return-pipe through which the water or steam flows after having passed through the heating coil or coils." That patent also describes a hinged leaf with a series of heating pipes fixed at their ends to the castings. "This arrangement for hinging the leaf O permits of the latter being turned in any direction in order to afford access to all the parts for cleaning the same."

As to the third advantage claimed by plaintiff, the Sheeder Patent No. 210,714 for an improvement in paper-board driers provides for connections between steam pipes and manifolds constructed of flexible pipe or gum tubing to permit the elevation and lowering of the pipes without interfering with the circulation of steam through them. The Trageser Patent No. 46,509 for an improvement in coils for steam heating shows that when a connecting coil is turned up for cleaning out a vessel, other pipes will also be turned. Moreover, Brophy hinged the leaves upon a post which forms a part of the return pipe through which the water or steam flows after having passed through the heating coil or coils.

As to the fourth advantage claimed by plaintiff, the court concludes that in each of the aforementioned patents it would have been possible safely to use one of plaintiff's coolants. Moreover, the Morison Patent No. 529,288 for heating liquids by steam describes a method for the free passage of water in the apparatus. Plaintiff has not shown any inventive faculty. Cf. Hunter Douglas Corp. v. Lando Products, 9 Cir., 215 F.2d 372, 375; Fowler v. Honorbilt Products, Inc., 3 Cir., 131 F.2d 153, 155; Lyons v. Construction Specialties, Inc., D.C., 112 F.Supp. 317, 322.

### Patent No. 2,179,949

The nature of the patent is described by the patentee in the patent specification. The patent relates to liquid treating plants whereby the liquid to be treated is subjected to the action of a heat exchange medium and also to the action of an atmosphere or stream of conditioned air or the like. The patent utilizes a surface type heat exchanger and provides for the projection of a stream of conditioned air against and among the heat exchange elements. One object of the patent is to use a cooler which can be readily and thoroughly cleaned; also to produce a wort cooler plant which will occupy minimum floor space. By reason of a close fit of the covers and casing which constitute the housing, it is possible to control the condition of the air, gas, or other fluid which is projected into the inclosure containing the cooling elements. Preferably, air is cleaned and heated to a suitable temperature and then forced into the interior of the housing. By projecting a stream of air through the interior of the cooler, spent air and vapors are carried away.

736

Is there patent validity in the use of a wide and shallow nozzle to blow a stream of conditioned air among heat exchange elements (which differentiates the two patents from each other)? Since the court concludes that the patent is invalid because of prior art anticipation and lack of invention, there is no need to discuss or decide the issue of infringement.

Hunziker's Patent No. 1,543,853 for an apparatus for deodorizing cream discloses a blower capable of supplying large volumes of air under pressure; the air supplied by the blower is preferably heated so that it can be used in maintaining the contents of the tank at the desired temperature. Hunziker's Claims 2 and 3 include a "means for forcing air through said container in a plurality of vertically directed jets closely spaced throughout the horizontal area of said container * * *," and Claims 5, 6, 7, and 8 include a "means for forcing air upwardly through said container in a plurality of vertically directed jets closely spaced throughout the horizontal area of said container * * *." The Vincent Patent No. 2,031,437 for a gas washer describes the use of a nozzle to discharge cleaning sprays; Claim 1 includes "a plurality of nozzles arranged to discharge generally crosswise * * *." Such a description does not materially differ from the plaintiff's claims. And surely one skilled in the art could have used the Vincent Patent description to meet the function of the wide nozzle described by plaintiff's patent.

█ Judgment will be entered for the defendant on plaintiff's complaint determining that claims 5 through 12 of Patent No. 2,169,054 and Patent No. 2,179,-949 are invalid for want of invention. The defendant is entitled to court costs, but not costs of suit.

The foregoing opinion shall constitute findings of fact and conclusions of law, as required by Rule 52, 28 U.S.C.

An order may be submitted in conformity with the opinion herein expressed.